IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LINDA GOETZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-3283 |
| | ) |
| THE CITY OF SPRINGFIELD, ILLINOIS, | ) |
| a municipal corporation, GREG SEIPEL, | ) |
| JAY C. BARTLETT, TODD RENFROW | ) |
| and TIMOTHY J. DAVLIN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF THE PLAINTIFF, LINDA GOETZ, IN
OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Linda Goetz ["Plaintiff"], a former employee of the City of Springfield, Illinois ["City"] maintains the instant lawsuit against both the City and four of its officials.[1] In her complaint, the Plaintiff alleges that she was unlawfully discharged from her employment with the City. In count I of her complaint, she claims that the City, in terminating her, discriminated against her because of her gender in violation of Title VII of the "Civil Rights Act of 1964" ["Act"] (42 U.S.C. § 2000e et.al.). In counts II through VI of her complaint, the Plaintiff, relying upon 42 U.S.C. § 1983, alleges that the Defendants discriminated against her on the basis of her gender in terminating her employment contrary to her rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution. In counts VII through XI of

---

[1] The individual Defendants are Greg Seipel, the Superintendent of Electric Distribution in the City's Department of Public Utilities ["Department"], Jay Bartlett, the Chief Utility Engineer in the Department, Todd Renfrow, the Director of the Department, and Timothy Davlin, the Mayor of the City.

her complaint, the Plaintiff, relying upon § 1983, alleges that the Defendants in terminating her employment deprived her of property without Due Process of law contrary to her rights under the Due Process Clause of the Fourteenth Amendment.

As their initial response to the Plaintiff's complaint, the Defendants seek its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their motion, the Defendants advance the following contentions: a) since the City is named as a Defendant, the constitutional tort claims joining the individual Defendants in their official capacity is unnecessarily redundant[2]; b) any request seeking the assessment of punitive damages against the City is improper; c) the Plaintiff's Equal Protection claims fail to allege personal responsibility on the part of the individual Defendants; d) a layoff does not rise to the level of a federal right privilege or immunity protected by § 1983; e) the Plaintiff cannot expand a § 1983 claim to allege a violation of the Act; f) the Plaintiff's Equal Protection claims against the City is improper since there is no allegation that it was in furtherance of City policies nor is there an adequate allegation that the Defendants were final policymakers of the City; and g) since the Plaintiff was laid off from her employment with the City, she has no constitutionally protected property interest which was denied her and thus her claims under the Due Process clause of the Fourteenth Amendment are infirm.

For reasons which follow, the Defendants' motion is meritless and should be denied.

---

[2] The Plaintiff agrees that so long as she is allowed to maintain her § 1983 claims against the City, her official capacity claims against the individual Defendants are unnecessarily redundant since an official capacity suit is another form of a claim against a governmental entity [*Tabor v. City of Chicago*, 10 F.Supp.2d 988 (ND Ill.1998); and *United Church of Christ v. City of Chicago*, 401 F.Supp.2d 887 (ND Ill.2005)].

## II. THE STANDARDS GOVERNING THIS COURT'S CONSIDERATION OF THE MOTION TO DISMISS

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the claim which will provide a defendant with fair notice of the plaintiff's claim and the grounds upon which its rests [See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113, 122 L.Ed.2d 517 (1993)]. It does not require a claimant to set out in detail the facts upon which he bases his claim [See *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); and *Leatherman* at p.168]. A plaintiff need not spell out every element of his legal theory in order to provide adequate notice [see *Hemenway v. Peabody Coal Company*, 159 F.3d 255, 261 (7th Cir. 1998); *Scott v. City of Chicago*, 195 F.3d 950, 951-52 (7th Cir.1999); and *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998)]. A plaintiff need not plead evidence in his complaint and a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing [see *Bennett* at p.518; and *American Nurses' Association v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986)].

In considering a motion to dismiss maintained under Rule 12(b)(6) of the Federal Rules of Civil Procedure a court must accept all well pleaded allegations in the complaint as true [See *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir.1996) and *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995)] and draw all reasonable inferences in favor of the nonmoving party [See *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177 (7th Cir.1996)]. It must view the allegations in the complaint in a light most favorable to the claimant [See *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987); and *Caldwell v. City of Elwood*,

959 F.2d 670 (7th Cir.1992)].  A court should not dismiss a complaint unless it is clear that there is no set of facts which a claimant could prove consistent with the pleadings that would entitle him to relief [See *Conley v. Gibson*, 355 U.S.41 (1957)].

### III.  THE PLAINTIFF'S CLAIMS AS SET FORTH IN HER COMPLAINT

A)  <u>The Plaintiff's Equal Protection Claims.</u>[3]

During the course of her employment, the Plaintiff worked for the City as its Key Accounts Manager in the Department.  At times relevant to this case, she was classified as a Project Manager [¶8,9].  As a key account manager, the Plaintiff called upon firms that were sizeable consumers of power marketed by the Department.  The Plaintiff had approximately 26 years of experience in marketing power to customers of utilities.  While working for the Department, she performed her job in a fully satisfactory manner [¶10,11].

In March of 2005 the Plaintiff was transferred to a new location and was informed that it was imperative to place new emphasis upon Department resources devoted to its key accounts [¶12].  At the facility where the Plaintiff was transferred, there were three project managers.  The Plaintiff was the only female project manager and at that facility there was only one female employee who had work responsibilities at a level of comparable responsibility to the Plaintiff's [¶13,14].

Upon her reassignment, the Plaintiff began sharing key account responsibilities with a male project manager who had significantly less training background and experience in the marketing of utility services and dealing with the Department's key accounts than did the Plaintiff.  She essentially trained

---

[3]   Unless otherwise stated, the paragraph numbers cited refer to paragraphs in the portion of the complaint containing allegations common to all counts.

him in the duties and responsibilities of her position and efforts were made to send this male project manager for extensive "fast track" training in key accounts [¶15,16]. In February of 2006 he was introduced to the Department's larger accounts as the Department's contact person for key accounts [¶21].

On March 3, 2006 the Plaintiff was informed she was being laid off from her employment with the City. She was the only individual who was laid off. The male project manager referred to above was not laid off even though he was less qualified than the Plaintiff for the position he assumed. The male project manager had less service with the Department than did the Plaintiff. Other than performing key account responsibilities, his job responsibilities were clerical in nature [¶24,25]. The Defendants, Seipel, Bartlett and Renfrow, directed, recommended or approved the decision that the Plaintiff be laid off [¶27 of counts II, III and IV]. The Defendant, Davlin, approved or directed that the Plaintiff be laid off [¶27 of count IV].

B) <u>The Plaintiff's Due Process Claim.</u>

The Plaintiff's position for the City was within its classified civil service system. Under the terms of both the "Illinois Municipal Code" [65 ILCS 5/1 et.al.] and the "Springfield City Code", she could not be discharged from her employment absent cause [¶27,28 of counts VII, VIII, IX, X and XI]. During the course of her employment, the Plaintiff satisfactorily performed her job duties for the City [¶10].

Beginning in April of 2005 and extending to the balance of her employment with the City, emails sent or received from her personal computer were forwarded to her City computer where they were accessible to City employees and officials [¶17]. On January 20, 2006 the Plaintiff without

explanation was removed from active employment with the City and placed on paid administrative leave for the balance of her employment. Although she was instructed to remain at home and be available to accept assignments while she was on leave, no assignments were given to her. Upon being placed on administrative leave, the Plaintiff's work computer was removed from her workstation [¶18,19]. While she was on administrative leave, the Department introduced a male project manager to its largest accounts as the individual who would be the contact person for key accounts [¶21-23].

Although the Plaintiff was informed that her separation was considered a layoff, no other Department was laid off and the new City budget had funded the Plaintiff's position for the next fiscal year [¶22,23].

The Defendants', Seipel, Bartlett and Renfrow, directed, recommended or approved of the Plaintiff's separation [¶34 of counts VII, VIII and IX]. The Defendant, Davlin, directed or approved of the Plaintiff's termination [¶34 of count X]. The decision placing the Plaintiff on administrative leave and thereafter terminating her employment was based upon a belief by one or more of the Defendants that she had engaged in conduct constituting cause for her removal from employment with the City [¶33 of counts VII, VIII, IX and X].

The Defendants, in terminating the Plaintiff, afforded her neither: a) a pre-disciplinary hearing prior to her termination; nor b) any opportunity for a hearing after her termination to challenge its propriety [¶35 of counts VII, VIII, IX and X].

## IV. ARGUMENT

A) <u>The Plaintiff Is Not Improperly Expanding § 1983 In Advancing Her Claims Of Sex Discrimination Against The Individual Defendants.</u>

The Defendants correctly conclude that § 1983 cannot be used as a vehicle for expanding liability under the Act against individual Defendants. That proposition, however, is entirely irrelevant to the sex discrimination claims advanced by the Plaintiff against the individual Defendants. As the text of the complaint makes clear, liability is premised against them not upon a violation of the Act, but instead upon a violation of the Equal Protection Clause.

In *Triggs v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985), a plaintiff advanced Equal Protection claims of race and sex discrimination. Our Circuit in that case recognized both that the Act prohibited employment discrimination based upon either race or sex and the Equal Protection Clause of the Fourteenth Amendment prohibited intentional discrimination based upon membership in a particular class. Despite the similarity of conduct addressed through each, it concluded that Title VII did not preempt a constitutional claim of status discrimination maintained under § 1983. In this respect, it stated:

> "- - we conclude that the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free from employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's remedial schemes, even if the same facts suggest a violation of Title VII" [p.302].

Our Circuit has consistently followed this rule [see *Ratliffe v. City of Milwaukee,* 795 F.2d 612 (7th Cir.1986); *Alexander v. Chicago Park District*, 773 F.2d 850 (7th Cir.1985); and *Wudke v. Davel*, 128 F.3d 1057 (7th Cir.1997)].

A reading of the complaint indicates that the Plaintiff's claims against the individual Defendants is not based upon violations of the Act, but instead upon the Equal Protection Clause. The law is well settled that notwithstanding the availability of the Act as a remedy, a public employee may maintain a

claim under the Equal Protection Clause for discriminatory treatment on the basis of sex.

   B)  <u>Contrary To The Contention Of The Defendants, The Complaint Adequately Alleges
   A Basis For Imposing § 1983 Liability Upon The City.</u>

In counts VI and XI of her complaint, the Plaintiff alleges § 1983 claims against the City. In ¶27 of each count she alleges that as the Mayor of the City and as the Director of the Department, Davlin and Renfrow were entrusted with the responsibility to make and formulate policies including personnel policies for employees within the Department. She further alleges that her removal from her employment with the Department was the result of the conduct of one or more of its policymaking officials [¶29 of count VI and ¶37 of count XI].

The Defendants claim that the allegations in each of those counts is inadequate to impose constitutional tort liability upon the City because: a) she has not "alleged that the individual defendants were persons with final policymaking authority" [p.8 of the Defendants' brief]; and b) she does not allege the existence of a policy or custom on the part of the City to discriminate on the basis of gender [p.9 of the Defendants' brief].

It is true that as a general matter a municipality cannot be held liable under § 1983 through a *respondeat* superior theory of liability, but may only be held liable for acts for which it is actually responsible. In other words, acts which a municipality has actually sanctioned or ordered [see *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 89 L.Ed.2d 452 (1986); and *St. Louis v. Paprotnik*, 485 U.S. 112, 123, 99 L.Ed.2d 107 (1988)].

Notwithstanding that principle, municipal officials who have final policymaking authority may

through their actions subject a municipality to § 1983 liability. In this respect, municipal liability under § 1983 may be imposed for a single decision by a policymaker under appropriate circumstances [see *Pembaur* at p.483; and *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir.1995)].

Whether an official has policymaking authority is a question to be analyzed under state law [see *Eversole* at p.715].

In this case the Plaintiff is challenging the motives of the City and its officials, particularly its Mayor, in terminating her employment. Under the Springfield City Code, an appointing authority may layoff any employee [see § 36.59]. The definition of appointing authority includes the Mayor of the City with respect to any position which is subordinate to the Mayor [see § 36.19].[4]

Since the Springfield City Code empowers the Mayor to make final decisions with respect to the layoff of employees working in departments reporting to him, he has final policymaking authority with respect to the conduct challenged in the complaint.

C) <u>The Complaint Adequately Alleges A Basis For Individual Liability Under § 1983.</u>

The individual Defendants claim they cannot be held liable with respect to the § 1983 claims advanced against them by the Plaintiff and, accordingly, those claims should be dismissed at this stage of the case. In this respect, they assert:

> "The plaintiff is unable to demonstrate that Seipel, Bartlett or Renfrow were directly or personally responsible for the alleged improper action that was taken against the plaintiff and, thus, individual liability cannot be shown" [p.5].

---

[4] Affixed to this instrument is the text of each of the cited sections of the Springfield Municipal Code.

This is a curious argument for the Defendants to make in a Rule 12(b)(6) proceeding given the allegations advanced by the Plaintiff against the individual Defendants. In her complaint the Plaintiff alleges personal responsibility by each of the individual Defendants. With respect to her constitutional claims, she alleges that Seipel, Bartlett and Renfrow directed, recommended and approved of her termination and Davlin either directed or approved of her termination. For purposes of Rule 8, nothing more is required to allege their personal responsibility.

D)  The Plaintiff Has Adequately Alleged A Deprivation Of Property For Purposes Of Her Due Process Claims Against The Defendants.

In order to sustain a claim under the Due Process Clause, the Plaintiff must demonstrate that: 1) she possessed a cognizable property interest in her employment; 2) she was deprived of that property interest by the government; and 3) the deprivation was accomplished without providing her adequate Due Process [see *Schroeder v. City of Chicago*, 927 F.2d 957, 959 (7th Cir.1991); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985); and *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir.1993)].

The Defendants claim that the Plaintiff's Due Process claims are fatally infirm since the face of her complaint reveals that she was deprived of no property interest. In this respect, they claim that the Plaintiff has "pled herself out of court" by alleging that she was subject to a layoff. According to it, a layoff would not trigger a constitutional entitlement to either a pre or post-deprivation hearing and, thus, the Due Process Clause is not implicated by their action. In making this argument, the Defendants either misread the Plaintiff's Due Process claims or choose to ignore portions of her complaint which undermine their argument.

While the Plaintiff in her complaint alleges that she was "informed by the Department that she was being laid off from her position with the City" [¶22], it is clear from the face of the complaint that she is contending that there was much more involved with her separation than a conventional layoff. As pled in her complaint, she was terminated based upon a belief that she had engaged in some form of misconduct which was cause for her removal from employment with the City [¶33 of counts VII, VIII, IX, X and ¶34 of count XI]. Furthermore, the complaint contains allegations suggesting that the Plaintiff was effectively terminated for cause. In this respect, she alleges that: a) her computer was surveilled by City employees [¶17]; b) without explanation she was removed from active employment with the City and placed on administrative leave for the balance of her City employment [¶18]; c) upon being placed on administrative leave, her computer was removed from her workstation; d) while on administrative leave a male employee effectively replaced her as the key account manager [¶21]; e) she was the only individual within the Department who was laid off from employment at the time of her layoff [¶22]; and f) the City's budget, adopted proximate to the Plaintiff's layoff, contained no Departmental funding reductions for personnel and her position for the next fiscal year was adequately funded [¶23].

Property interests do not arise under the Constitution but, instead are founded in independent sources such as state law [*Loudermill v. Cleveland Board of Education,* 470 U.S. 532, 84 L.Ed.2d 494 (1985); and *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548 (1972)]. Our Circuit has recognized that a state statute may create a protectable interest in employment [see *Hohmeier v. Leyden Community High School District 212*, 954 F.2d 461, 464 (7th Cir.1992); *Domiano v. River Grove*, 904 F.2d 1142, 1148 (7th Cir.1990); and *Farmer v. Lane,* 864 F.2d 473, 478 (7th

Cir.1988)].

In this case, the Plaintiff alleges property interest buttressed in both state law and City ordinance. She claims that the position she held was in the classified City service of the City. Accordingly, under the provisions of both § 10-1-18 of the "Illinois Municipal Code" [65 ILCS 5/10-1-18] and § 36.31 of the "Springfield City Code", she could not be discharged from her employment absent cause. It is abundantly clear that a public employee having tenure in her employment or otherwise protected against termination absent cause by civil service provisions has a property interest in employment [see for example *Loudermill v. Cleveland Board of Education,* (*op.cit.*1985); and *Board of Regents v. Roth* (*op.cit.*1972)].

In her complaint, the Plaintiff has both: a) adequately alleged a property interest in her employment protecting her against termination for cause without both a pre-deprivation and post-deprivation hearing; and b) alleged that even though she was told she was being laid off, the circumstances for her separation indicate that she was being terminated based upon a belief she had engaged in cause justifying her termination.

Curiously, the Defendants rely upon the holding of the Illinois Supreme Court in *Powell v. Jones*, 56 Ill.2d 70, 305 N.E.2d 166 (1973), for the proposition that the Plaintiff has not alleged facts indicating she suffered a property deprivation. A careful reading of *Powell* undermines rather than helps the Defendants. The issue in *Powell* was whether the totality of the plaintiffs' interest in continued public employment was sufficient to entitle them to a pre-layoff hearing under the Due Process Clause absent "any allegations that such layoffs have been improperly motivated" [p.73]. Recognizing that case involved a pure layoff motivated by economic or operational considerations, the *Powell* court

reasoned that the plaintiffs were not entitled to a hearing prior to the implementation of the layoff. In this respect, it recognized "the qualitative differences between layoff and discharge are such that variances in procedure are constitutionally permissible" [p.81]. The allegations in the Plaintiff's complaint reflect that her layoff was not one motivated by operational or economic considerations of the type in *Powell*, but instead motivated by a belief that she had engaged in misconduct which, according to the *Powell* court, would have involved the deprivation of an interest entitling her to more elaborate Due Process requirements [see *Powell* at pp.81-82].

For purposes of Rule 8 of the Federal Rules of Civil Procedure, the Plaintiff has alleged the deprivation of a property interest of a type implicating the Due Process Clause.

E)  The Defendants' Miscellaneous Contentions.

In their motion, the Defendants attack several other portions of the Plaintiff's complaint. First, they claim that the Plaintiff's request for punitive damages sought against the City should be dismissed and stricken. While the Defendants may be right on the law that punitive damages are not recoverable against a municipality, they have ignored the complaint. In her prayer for relief, the Plaintiff requests that exemplary damages be assessed against the Defendants "to the extent provided by law" [see ¶25 of the complaint]. It is clear from her claim that the Plaintiff is not asking for relief against the City which is contrary to law.

Second, the Defendants in their brief argue in passing and without reference to any authority that the Plaintiff's layoff does not deprive her of a federal right, privilege or immunity under § 1983 "because a layoff does not rise to the level of a federal right, privilege or immunity". The Defendants are wrong for two reasons. First, it is not the theory of her case that she was subjected to a

conventional layoff.  Rather, she claims that although she was informed that she was being laid off the circumstances in which she was removed from her employment with the City reflect that she was terminated essentially because of a belief that she had engaged in cause.  Second, even if she was laid off, the layoff, if motivated because of her gender, ended her City employment and is not compatible with her rights under the Equal Protection Clause.

## V.  CONCLUSION

For the foregoing reasons, the Plaintiff, Linda Goetz, respectfully requests that the Defendants' motion to dismiss be denied.

LINDA GOETZ, Plaintiff

By:   s/ James P. Baker
      James P. Baker
      Bar Number: 0097802
      Baker, Baker & Krajewski, LLC
      415 South Seventh Street
      Springfield, Illinois 62701
      Telephone: (217) 522-3445
      Facsimile: (217) 522-8234
      E-mail: brendabakerlaw@sbcglobal.net
      (Memorandum/goetzlinmtdopposition 031207)

### CERTIFICATE OF SERVICE

       I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Frank Martinez
Office of Corporation Counsel
City of Springfield, Municipal Center East, #313
800 East Monroe Street
Springfield, Illinois   62701


                By:   s/ James P. Baker
                    James P. Baker
                    Baker, Baker & Krajewski, LLC
                    415 South Seventh Street
                    Springfield, Illinois 62701
                    Telephone: (217) 522-3445
                    Facsimile: (217) 522-8234
                    E-mail: brendabakerlaw@sbcglobal.net

Management Assistance Compact Act [45 ILCS 151/1 et seq.], or other applicable administrative rules may be granted leave from his work with pay for not more than 20 working days in any 12-month period to participate in specialized disasterrelief services for the American Red Cross or for the Illinois Emergency Management Agency, as the case may be, upon the request of the American Red Cross or the Illinois Emergency Management Agency for the services of that employee and upon approval of that employee's director, without loss of seniority, pay, vacation time, compensatory time, personal days, sick time or earned overtime accumulation. The city shall compensate an employee granted leave under this section at his regular rate of pay for thoseregular work hours during which the employee is absent from his work. Leave under this section shall not be unreasonably denied for services related to a disaster within the United States or it territories.

(Ord. No. 923-11-90, 11-20-90; Ord. No. 294-4-92, 4-7-92; Ord. No. 500-6-92, §§ 1, 2, 6-2-92; Ord. No. 609-9-96, § 1, 9-3-96; Ord. No. 613-12-98, § 1, 12-1-98; Ord. No. 235-4-00, § 1, 4-18-00; Ord. No. 558-09-03, § 1, 9-30-03; Ord. No. 706-10-05, § 1, 10-4-05)

### § 36.59. Layoff.

(a) An appointing authority may lay off any employee within an operational unit in the city service whenever this action is made necessary by reason of shortage of work or funds, the abolition of a position, or because of changes in organization. However, no employee within the affected operating unit shall be laid off while there are temporary or probationary employees serving in the same class of position for which the employee is eligible and available.

(b) If it becomes necessary to lay off an employee, the appointing authority may take into consideration the employee's performance, length of service, and ability to do the work remaining in the department.

(c) Employees on layoff shall not accumulate vacation and sick leave during the period of absence, and their anniversary date shall be adjusted by the period of layoff.

(d) The appointing authority shall be responsible for establishing a reemployment plan consisting of a reemployment list, the posting of the list and maintenance thereof. The reemployment plan must be submitted to the civil service commission.

(e) The names of employees laid off shall be placed on a reemployment list for a period of 12 months.

(f) Reappointment shall be according to the position on the reemployment list.

### § 36.60. Resignation.

Any employee wishing to leave the city service in good standing shall file with the appointing authority, at least two weeks before leaving, a written resignation stating the date the resignation shall become effective. Upon receipt of the resignation by the appointing authority, it shall become irrevocable. Failure to comply with this procedure may be considered cause for denying the employee future employment by the city.

### § 36.61. Retirement.

(a) Early retirement, as used in this section with respect to regular full-time employees other than police officers or firefighters, occurs when an employee voluntarily ceases employment with the city, is at least age 55, and has at least eight years continuous service with the City of Springfield. Retirement with respect to police officers and firefighters of the city occurs when an

## ARTICLE II. DEFINITIONS

### § 36.19. Definitions.

For the purpose of this chapter the following definitions shall apply unless the context clearly indicates or requires a different meaning.

*Allocation.* The assignment of an individual position to an appropriate class on the basis of the kind, difficulty, and responsibility of the work actually performed in the position.

*Anniversary date.* The date upon which a regular employee receives his appointment to the position presently occupied.

*Appeal.* An application for review of grievance submitted or instituted by an employee to a higher authority.

*Appointing authority.* The mayor, city clerk or city treasurer to whom the position is subordinate.

*Appointment.* The appointment to a position in the classified service of a person who has qualified for the appointment through appropriate examination or determination of fitness.

*Cause for discharge.* Some substantial shortcoming which renders continuance in office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for the employee no longer occupying the position.

*Certified employee.* An employee who has successfully completed the probationary period.

*Child.* A biological, adopted, or foster child, a stepchild, a legal ward, or a child for whom the employee is standing in loco parentis, who is:

(1) Under 18 years of age; or

(2) Eighteen years of age or older and incapable of self-care because of a mental or physical disability.

*Class.* A group of positions or a position having approximately similar duties and responsibilities, requiring similar qualifications, which should be properly designated by one title indicative of the nature and level of work and which should carry the same pay grade assignment.

*Class specification.* A written description of a class of positions consisting of a class title, a statement of the nature and level of work, illustrative examples of work and desirable qualifications for entry into the class of positions.

*Classification plan.* The official manual of class specifications consisting of an index to the class specifications and rules concerning administration of the plan.

*Classified service.* All positions of employment in the city except those positions wholly exempt by the provisions of this chapter and those positions exempted from Jurisdiction A, in accordance with the rules adopted under the provisions of this chapter.

*Compensation (pay) plan.* The official schedule of pay approved by the city council assigning pay grades to each class title and the provisions of this chapter concerning administration of the plan.

*Compensatory leave.* Authorized time off from work in lieu of monetary payment for overtime work.

*Continuous service.* Employment in the service without a break or interruption from the date of

original appointment.

*Creditable service.* The period of time commencing from the date of original appointment to a position and including all eligible employment periods thereafter.

*Demotion.* The assignment of an employee from one class of position to another which has a lower pay grade.

*Department.* A principal subordinate department reporting to the mayor.

*Director.* The director of one of the principal offices in city government.

*Duty day.* Any day on which an employee is scheduled to be available for the duties of his position.

*Employee.* Any person employed by the City of Springfield pursuant to the provisions of this chapter.

*Examination.* The process of testing, evaluating, or investigating the fitness and qualifications of applicants and employees.

*Exempt employee.* Any employee occupying a position in the exempt service.

*Exempt service.* Consists of all positions exempted by section 36.04 of this chapter.

*Grievance.* A dispute or disagreement raised by an employee concerning the interpretation and/or application of the specific provisions of this chapter, except as otherwise limited.

*Immediate family.* An officer's or employee's spouse and children or stepchildren residing in the same household; except, however, for purposes of funeral leave, immediate family shall include other family members as set forth under section 36.58(d).

*Job audit.* A systematic examination of the duties and responsibilities of a particular employee for the purpose of determining whether such employee is properly classified.

*Layoff.* Involuntary, nondisciplinary separation from service because of shortage of funds or materials, lack of work or abolishment of position for reasons beyond the control of an employee.

*Leave.* An approved leave of absence from work as set forth in this chapter.

*Merit pay increases.* An increase in compensation provided for in the compensation (pay) plan which may be granted to an employee for exemplary service.

*Month.* One calendar month.

*Original appointment.* Appointment to a position in the classified service of a person not a current employee of the city.

*Overtime.* Authorized time worked by an employee in excess of an approved work schedule of 37 1/2 hours a week.

*Parent.* The biological parent of an employee or an individual who stood in loco parentis to an employee when the employee was a minor.

*Pay grade.* The range of pay assigned to a class.

*Pay rate.* A specific dollar amount expressed as an annual rate, a monthly rate, bi-weekly rate, or an hourly rate established in the schedules of the official compensation (pay) plan.

*Performance appraisal.* A systematic process designed to evaluate employee work performance and the purpose of assisting management in making employment decisions.

*Personnel transaction.* Any personnel action affecting the status of an employee such as appointment, compensation, promotion, transfer, layoff, suspension, termination or a demotion.

*Position.* Any office or employment whether occupied or vacant.

*Probationary employee.* An employee who has not completed the probationary period during which he is required to demonstrate fitness in a position by actual performance of the duties of the position.

*Probationary period.* The first 12 months of employment for an original appointment and the first six months of employment for a promotional appointment, unless there is an absence of 30 days or more during the probationary period, in which case the probationary period shall be extended by the period of absence.

*Promotion.* The assignment of an employee from one class of position to another which has a higher pay grade.

*Regular full-time employee.* An employee whose regular work week consists of at least 37 1/2 hours per week.

*Regular part-time employee.* An employee whose work week consists of less than 37 1/2 hours per week, provided, however, that no regular part-time employee who works a regular work week of less than 20 hours shall be eligible for pro-rated benefits.

*Resignation.* Formal announcement or relinquishment of an office or employment.

*Retirement.* Voluntary separation from service of a regular full-time employee who has reached at least age 55 and has at least eight years of continuous city service.

*Seniority.* Priority based on the length of continuous service of a regular employee.

*Sexual harassment.* Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes "sexual harassment" when:

 (1) Submission to the conduct is made either explicitly or implicitly a term or condition of an individual's employment;

 (2) Submission to or rejection of the conduct by an individual is used as the basis for employment decisions affecting the individual; or

 (3) The conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

*Suspension.* An involuntary leave of absence for disciplinary purposes or pending investigation of charges made against an employee.

*Temporary appointment.* An appointment to meet an emergency or seasonal need not to exceed six months in any one calendar year.

*Temporary assignment.* The assignment of an employee on a temporary basis to perform the duties and responsibilities of a position in the same or a different class than the one he is currently assigned.

*Temporary employee.* An emergency or seasonal employee hired for not more than six months in any one calendar year.

*Termination.* A separation from municipal employment resulting from discharge, resignation, retirement, or death.

*Transfer.* The assignment of an employee from one position to another position in the same or another department, having similar duties and pay grade.

(Ord. No. 570-7-91, 7-2-91; Ord. No. 670-9-95, § 1(Exh. E), 9-19-95; Ord. No. 609-9-96, § 1, 9-3-96)