IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LINDA GOETZ, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-cv-3283 |
| ) | |
| THE CITY OF SPRINGFIELD, ILLINOIS, ) | |
| a municipal corporation, GREG SEIPEL, ) | |
| JAY C. BARTLETT, TODD RENFROW, ) | |
| and TIMOTHY DAVLIN, ) | |
| ) | |
|    Defendants. ) | |

ORDER

RICHARD MILLS, U.S. District Judge:

Before the Court are a number of Motions in Limine.  All of the Motions in Limine will be allowed.

I. UNOPPOSED MOTIONS

A. Completely Unopposed

The Defendants' First [d/e 55], Third [d/e 57], and Fourth [d/e 58] Motions in Limine are completely unopposed by the Plaintiff.

Accordingly, these Motions are allowed.

Therefore, the Court bars the introduction of, or reference to:

- the discovery of nooses at the Department of Public Utilities (Department)[1] facilities (First Motion in Limine);

- previous lawsuits alleging misconduct (Third Motion in Limine); or

- the allegations made by Renatta Frazier against the City or its employees (Fourth Motion in Limine).

B. Unopposed With Reservations

In their Fifth Motion in Limine [d/e 59], the Defendants seek to bar reference to discriminatory or retaliatory acts in City divisions other than the Department. The Defendants state that this includes, but is not limited to, "Public Works, [the] Police Department and the Fire Department."

The Plaintiff has stated that she has no objection to the Motion "[t]o the extent the Defendants' request in that Motion is directed toward divisions or units of the City other than the Department."

It appears that the Plaintiff and the Defendants understand each other correctly. The Fifth Motion is related to units of City government

---

[1] The Department is also known as City Water, Light & Power (CWLP).

other than the Department of Public Utilities, and it is unopposed by the Plaintiff. The Motion is allowed, and as a result, reference to discrimination or retaliation in City departments other than the Department of Public Utilities is barred.

## II. DEFENDANTS' SECOND MOTION IN LIMINE

In their Second Motion in Limine [d/e 56], the Defendants seek to bar the testimony of Ryan Beal, Brent Stone, John Benanti, and Kevin McAvoy, because they were not listed as witnesses on the Plaintiff's initial disclosures, as required by Fed. R. Civ. P. 26(a)(1)(A). The rule provides that:

> . . . a party must, without awaiting a discovery request, provide to the other parties:
>
>> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a)(1)(A).

The Defendants have stated that they "do not have any knowledge of any relevant information [Beal, Stone, Benanti, or McAvoy] may

possess and did not take their deposition during the discovery phase of litigation." Mem. in Supp. of Defs.' Second Mot. in Lim. [d/e 56-1], 1.

The Plaintiff does not dispute that Beal, Stone, Benanti, and McAvoy were not properly disclosed. Therefore, the Court bars the testimony of Ryan Beal, Brent Stone, John Benanti, and Kevin McAvoy.

### III. DEFENDANTS' SIXTH MOTION IN LIMINE

In their Sixth Motion in Limine [d/e 60], the Defendants seek to bar Bob Budnick, Dick Poynter, Ed Vehovic, Maureen Fischer, Bruce Kern, David Waltrip, and Buddy King from testifying about the Plaintiff's job performance and interactions with key account representatives. The Plaintiff responds that these individuals would instead be called to testify regarding statements by City officials relating to the Plaintiff's placement on administrative leave.

The Plaintiff's job performance is irrelevant to the only remaining claim in this case–an alleged violation of due process rights. The Defendants have repeatedly stated that the Plaintiff's layoff was wholly unrelated to her performance. Furthermore, the Plaintiff agrees that

evidence of her job performance should be off limits.

Therefore, the Defendants' Sixth Motion in Limine is allowed. The Court bars the testimony of Budnick, Poynter, Vehovic, Fischer, Kern, Waltrip, and King as it relates to the Plaintiff's job performance and to the interaction these individuals had with the Plaintiff regarding key account issues.

## IV. PLAINTIFF'S MOTION IN LIMINE

### A. Job Performance

The Plaintiff seeks in her Motion in Limine [d/e 61] to bar the Defendants from introducing evidence relating to or commenting on her job performance. As indicated above, the Plaintiff's job performance is irrelevant to the case.

The Defendants opposed this portion of the Motion, because they believed that testimony of City officials would be necessary to rebut the favorable testimony of Budnick, Poynter, Vehovic, Fischer, Kern, Waltrip, and King. However, we now know Budnick, Poynter, Vehovic, Fischer, Kern, Waltrip, and King will not testify regarding the Plaintiff's

job performance.

Therefore, the portion of the Plaintiff's Motion relating to job performance is allowed. The Court prohibits the Defendants from presenting evidence relating to or commenting upon the following:

- the working relationship between the Plaintiff and her supervisor, Mike Workman;

- the alleged performance deficiencies on the part of the Plaintiff during the time she worked under the supervision of Workman;

- Mike Workman's assessment of the attitude or conduct of the Plaintiff during the time period she worked under his supervision; or

- any assessment or opinion from Greg Seipel or Jay Bartlett concerning the manner in which the Plaintiff either performed her job duties or conducted herself in the workplace (other than the incident giving rise to her being placed on administrative leave in January 2006).

B. Need for Key Accounts Position

The Plaintiff also seeks to bar "the assessment or opinions of Mike Workman, Jay Bartlett, or Greg Seipel concerning the need for the position held by the Plaintiff." The Plaintiff argues that the assessments or opinions of these individuals are not relevant.

The Plaintiff quotes from the Contested Issues of Fact in the Joint Pre-Trial Order [d/e 54] to demonstrate that one of the main questions in the case is whether the Plaintiff was separated from the City as part of a valid reorganization or because of perceived misconduct.

Ostensibly, the Defendants seek to use the testimony of Workman, Bartlett, and Seipel to show that a layoff was warranted.

Relying upon the text of Rule 401 of the Federal Rules of Evidence,[2] the Plaintiff argues that the testimony of these officials is irrelevant because Todd Renfrow did not rely upon or seek the advice of Workman, Bartlett, or Seipel in making his decision to layoff the Plaintiff. Ultimately, the Plaintiff's argument is persuasive.

From the documents on file, it is clear that Defendant Todd Renfrow acted alone in placing the Plaintiff on administrative leave and in deciding that the Plaintiff should be laid off.

Renfrow was asked to state the name of each person "who made,

---

[2] The rule provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

7

recommended, or otherwise participated in the decision to place Goetz on administrative leave in January of 2006." Renfrow's Resp. to Pl.'s Int. [d/e 62-1], 2. Renfrow responded as follows: "It was my decision to put the Plaintiff on administrative leave." *Id.* at 2.

Renfrow was also asked to name "each person who made, recommended or otherwise participated" in the layoff decision. *Id.* at 2-3. Renfrow responded: "It was my decision to layoff the Plaintiff." *Id.* at 3.

Renfrow stated in his deposition that he did not discuss the Plaintiff's layoff with Seipel or Bartlett prior to making his decision. Renfrow Dep. [d/e 62-1] 11-12, 15-16. Both Bartlett and Seipel have indicated that they did not participate in the decision to lay off the Plaintiff. Bartlett's Resp. to Pl.'s Int. [d/e 62-1], 2; Seipel's Resp. to Pl.'s Int. [d/e 62-1], 2.

Furthermore, Renfrow has indicated that in the years leading up to the layoff, nothing new influenced his putatively long-held belief that the Plaintiff's position was unnecessary. *See* Renfrow's Dep. [d/e 62-1], 85-

88.

Because Bartlett, Seipel, and Workman were not involved in the decision to lay off the Plaintiff, their independent assessment of the need for Plaintiff's position is irrelevant.

The Defendants' arguments to the contrary are unpersuasive. First, they cite to Renfrow's interrogatory response that "Greg Seipel, General Superintendent of Electrical Transmission and Distribution, Jay Bartlett, Chief Utility Engineer, William O'Rourke are aware of my decision to layoff the Plaintiff." Def. Renfrow's Resp. to Pl.'s Int. [d/e 62-1], 2. It is irrelevant that these individuals learned of Renfrow's decision after he made it. As discussed above, it is clear from Renfrow's interrogatory responses and deposition testimony that he alone decided to lay off the Plaintiff, without seeking the advice of Workman, Bartlett, or Seipel.

The Defendants argue that Jay Bartlett should be allowed to testify concerning the need for the Plaintiff's position because he was the individual who informed the Plaintiff and her attorney of the layoff. At that meeting, Bartlett explained that the layoff decision was a business

decision unrelated to discipline or performance. The Defendants assert that "Bartlett needs to be able to explain to the jury what the change in business practices was, why it changed and how this affected the Plaintiff." Defs.' Opp. to Pl.'s Mot. in Limine [d/e 63], 3.

Bartlett's testimony about the reason for the layoff is barred by this order. Bartlett was not involved in the layoff decision, therefore any testimony by him regarding why the layoff occurred would be speculative. However, even with the limitation contained in this order, Bartlett can still address what the business change was and how it affected the Plaintiff.

The Defendants further argue that the Plaintiff's Motion in Limine should be denied because Bartlett, Seipel, or Workman might have had conversations with Renfrow concerning the need for the Plaintiff's position. The Defendants are unable to cite any depositions or interrogatory responses in the record that indicate that such conversations took place.

Instead, they state that "Seipel indicated in his response to

Plaintiff's Interrogatories that he told Jay Bartlett that the Plaintiff's position was not needed because there was not a lot of emphasis on building up the key accounts program prior to the Plaintiff being laid off." Defs.' Opp. to Pl.'s Mot. in Limine [d/e 63], 3 (citing Seipel's Resp. to Pl.'s Int. [d/e 62-1], 2).

The Defendants also state that Renfrow, in his deposition, "testified that he could have spoken to William O'Rourke or any of his staffers about the need for the key account position and might have asked for their advice." Defs.' Opp. To Pl.'s Mot. in Limine [d/e 63], 3 (citing Renfrow Dep. [d/e 62-1], 13-14).

The Defendants ask the Court to couple Renfrow's nebulous testimony with Seipel's statement about his conversation with Bartlett to conclude that maybe Workman, Seipel, or Bartlett spoke with Renfrow about the Plaintiff's position, and that these conversations had an impact on Renfrow. This is a bridge too far.

The opinions of Workman, Seipel, and Bartlett concerning the need for the Plaintiff's position do not constitute relevant evidence.

Therefore, the Court bars the Defendants from presenting evidence relating to or commenting upon the assessment or opinions of Mike Workman, Jay Bartlett, or Greg Seipel concerning the need for the position held by the Plaintiff.[3]

## V. CONCLUSION

*Ergo*, the Defendants' First [d/e 55], Second [d/e 56], Third [d/e 57], Fourth [d/e 58], Fifth [d/e 59], and Sixth [d/e 60] Motions in Limine are ALLOWED.  The Plaintiff's Motion in Limine [d/e 61] is ALLOWED.

IT IS SO ORDERED.

ENTER: June 22, 2010

FOR THE COURT:          s/Richard Mills
                        United States District Judge

---

[3] The Court notes that William O'Rourke, who Renfrow mentioned by name regarding possible conversations, was not included in the Plaintiff's Motion in Limine.